646 S.E.2d 866

**Thomas J. TORRENCE and William Ray Ward, on behalf of themselves and all others similarly situated and Kimberly Dubose, on behalf of herself and all others similarly situated, Appellants,**

v.

**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS and The State of South Carolina, Defendants,**

**of whom SOUTH CAROLINA DEPARTMENT OF CORRECTIONS is, Respondent.**

No. 26328.

Supreme Court of South Carolina.

Heard March 6, 2007.

Decided May 7, 2007.

Rehearing Denied July 19, 2007.

---

**15.** I do not suggest that Deputy McKellar did anything improper.

**16.** *In re Gault, supra* at 55, 87 S.Ct. 1428.

588

A. Camden Lewis, and Peter D. Protopapas, of Lewis & Babcock, of Columbia, and Helen T. McFadden, of Kingstree, for Appellants.

Lake E. Summers, of Malone, Thompson & Summers, of Columbia, for Respondent.

Acting Justice COTTINGHAM.

This is a direct appeal from the trial court's dismissal of appellants' declaratory judgment action. We affirm in result.

## FACTS

Appellants seek certain declarations of rights under various statutes related to the Prison Industries Program. *See* S.C.Code Ann. §§ 24–3–40, 24–3–310 thru –430 (2007). Appellants' Second Amended Complaint alleged a class action suit and described the class as follows: "The class consists of all individuals who are beneficiaries of the wages ... paid to prisoners participating in the Prison Industries Program." Three specific sub-classes were alleged:

(1) the "Prisoner Subclass"—Thomas J. Torrence and William Ray Ward represent all prisoners who have participated in the Prison Industries Program at Evans Correctional Institution;

(2) the "Victim Beneficiary Subclass"—Kimberly Dubose, a victim of a felony and recipient of funds from the South Carolina Victims Compensation Fund ("SCVCF"), represents all crime victims who have been awarded funds from the SCVCF and all crime victims receiving restitution paid by prisoners participating in the Prison Industries Program; and

(3) the "Dependent Beneficiary Subclass"—Susan Smith, who has a child whose father is an inmate working in the Prison Industries program at Evans, represents all dependents of prisoners entitled to support payments from funds received through the Prison Industries Program.[1]

---

1. We note that the issue of class certification was not ruled upon by the trial court.

Both Torrence and Ward participated in the Prison Industries Wire Harness Assembly facility at Evans for the private sector company Insilco Technologies Group ("Insilco"). The program is federally certified and operates under various state statutes. *See e.g.*, S.C.Code Ann. §§ 24–3–40, 24–3–315 & 24–3–430 (2007). After initially receiving training wages at 25 cents and 75 cents per hour, Torrence and Ward were subsequently paid $5.25 per hour for their work.[2] Appellants allege, however, that Insilco pays respondent, the South Carolina Department of Corrections (the "DOC"), $7.17 per hour for their labor. Appellants' main claim is that the DOC improperly diverts $1.92 from the $7.17 hourly wage received from Insilco and deposits this money into a DOC Surplus Fund. As a result, members of all three subclasses allegedly lose money to which they are entitled under statute. Appellants further claim that the prevailing wage for similar work is $9.84 per hour. Finally, Torrence and Ward claim that they are entitled to immediate access of the portion of their wages which are placed in escrow pursuant to section 24–3–40(A)(5).

Based on the above allegations, appellants sought, *inter alia*, a declaration from the circuit court that the DOC has violated South Carolina law. *See* §§ 24–3–40 & 24–3–430.

The DOC filed a motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), SCRCP. Finding that the complaint properly stated a declaratory judgment action which involved novel issues, the trial court initially denied the motion in November 2002. However, after this Court issued its opinions in *Adkins v. S.C. Dep't of Corrections*, 360 S.C. 413, 602 S.E.2d 51 (2004), and *Wicker v. S.C. Dep't of Corrections*, 360 S.C. 421, 602 S.E.2d 56 (2004), the DOC renewed its motion to dismiss.

The trial court ruled that *Adkins* and *Wicker* barred the entire declaratory action and therefore granted the dismissal. The trial court found the circuit court was not the proper forum for members of the Prisoner Subclass to use for an adjudication of their rights. Instead, the trial court noted that, pursuant to *Wicker*, these members could pursue their claims via the DOC's inmate grievance procedure. As to the Victim and Dependent Beneficiary Subclasses, the trial court

---

2. The training period covered their initial 320 hours of employment.

ruled that, pursuant to *Adkins,* these members likewise had no private right of action. Essentially, the trial court ruled the non-prisoners could rely on the prisoner members' grievance actions.

Appellants moved for reconsideration; after additional briefing on specific issues related to the Victim and Dependent Beneficiary Subclasses, the trial court denied the reconsideration motion. This appeal follows.

## ISSUES

1. Did the trial court err in dismissing the declaratory judgment action brought by the three Subclasses regarding their rights under the Prison Industries Statutes?

2. Did the trial court err in dismissing the claim related to the inmates' wages held in escrow?

## DISCUSSION

### 1. Dismissal of Action from Circuit Court

Appellants argue the trial court's determination left the victim and dependent beneficiaries without any avenue of relief. Although we affirm the trial court's dismissal from circuit court of the entire lawsuit, we agree with appellants that the victim and dependent beneficiaries may not be denied some form of process for their claims to percentages of the monies earned by inmates who participate in the Prison Industries Program.

The Legislature specifically authorized inmate labor in private industry via S.C.Code Ann. section 24–3–430. This statute provides that "[n]o inmate participating in the program may earn less than the prevailing wage for work of similar nature in the private sector." S.C.Code Ann. § 24–3–430(D) (2007); *see also* § 24–3–315 (for a prison industry project, the DOC must determine "that the rates of pay and other conditions of employment are not less than those paid and provided for work of similar nature in the locality in which the work is performed"). Moreover, section 24–3–430(H) expressly directs that "[t]he earnings of an inmate authorized to work at paid employment pursuant to this section **must be paid di-**

rectly to the [DOC] and applied as provided under Section 24–3–40." (Emphasis added).

Section 24–3–40 governs the disposition of prisoner wages and provides in pertinent part:

(A) Unless otherwise provided by law, the employer of a prisoner authorized to work at paid employment . . . in a prison industry program . . . shall pay the prisoner's wages directly to the [DOC].

The Director of the Department of Corrections shall deduct the following amounts **from the gross wages** of the prisoner:

(1) If restitution to a particular victim or victims has been ordered by the court, then **twenty percent** must be used to fulfill the restitution obligation. . . .

(3) **Thirty-five percent** must be used to pay the prisoner's child support obligations pursuant to law, court order, or agreement of the prisoner. These child support monies must be disbursed to the guardian of the child or children or to appropriate clerks of court, in the case of court ordered child support, for application toward payment of child support obligations, whichever is appropriate. . . .

(4) **Ten percent** must be available to the inmate during his incarceration for the purchase of incidentals. Any monies made available to the inmate for the purchase of incidentals also may be distributed to the person or persons of the inmate's choice.

(5) **Ten percent** must be held in an interest bearing escrow account for the benefit of the prisoner.

(6) The remaining balance must be used to pay federal and state taxes required by law. Any monies not used to satisfy federal and state taxes must be made available to the inmate for the purchase of incidentals pursuant to subsection (4).

S.C.Code Ann. § 24–3–40 (emphasis added).

This Court addressed the Prison Industries statutes in the companion cases of *Adkins* and *Wicker*. In *Wicker*, the inmate (Wicker) filed an inmate grievance claiming that his training wages violated the prevailing wage provision. *See* § 24–3–430(D). The Court affirmed the Administrative Law

Court's ruling that Wicker was entitled to the prevailing wage of $5.25 per hour during his first 320 hours of employment. In so finding, we acknowledged that while Wicker did not have a private, civil cause of action available to him, he nevertheless had a statutory right to a prevailing wage which had been created by the State. Significantly, we held that a state-created right cannot thereafter be denied "without affording due process of law." *Wicker*, 360 S.C. at 424, 602 S.E.2d at 57. Thus, Wicker had appropriately utilized the internal DOC grievance procedure to adjudicate his rights.

In *Adkins*, the inmates filed tort claims in circuit court against the DOC alleging violations of the prevailing wage statutes. The Court affirmed the circuit court's determination that these statutes provided no private right of action for inmates. Noting that "the overall purpose of the prevailing wage statute is to prevent unfair competition, and to aid society and the public in general," we decided the statutes were not enacted for the special benefit of inmates. *Adkins*, 360 S.C. at 418, 602 S.E.2d at 54. Nonetheless, the *Adkins* Court stated the inmates were not without a remedy because *Wicker* allowed them an avenue of relief through the inmate grievance system.[3]

 Appellants claim that despite the holdings of *Adkins* and *Wicker*, the Prisoner Subclass should be able to proceed in circuit court in the posture of a declaratory judgment action. We disagree. The clear rule emerging from the *Adkins* and *Wicker* cases is this: inmates working in the Prison Industries Program have a cognizable, state-created interest in having the DOC pay them according to the statutory scheme governing the Program, but they do not have a private right of action; instead, the DOC's internal grievance procedure, with recourse to the Administrative Law Court, is the appropriate way to have a prisoner's wage claim adjudicated. Therefore, the trial court correctly applied *Adkins* and *Wicker* to the Prisoner Subclass. To hold otherwise would contravene our precedent on these issues by allowing inmates

---

3. More recently, we held in *Williams v. S.C. Dep't of Corrections*, 372 S.C. 255, 641 S.E.2d 885 (2007), that a class of inmates could not maintain a prison industry program suit against the private industry sponsor who paid the prisoners' wages to the DOC.

access to the circuit court merely by styling their cases as declaratory judgment actions.

■ Likewise, regarding the victim and dependent beneficiaries, *Adkins* and *Wicker* apply to bar an action in circuit court. As we stated in *Adkins*: "the overall purpose of the prevailing wage statute is to prevent unfair competition, and to aid society and the public in general." *Adkins*, 360 S.C. at 418, 602 S.E.2d at 54. Because the statutes are not for the special benefit of the victim and dependent beneficiaries, there is no private right of action. *See id.*

■ Nonetheless, the trial court erred in suggesting that these beneficiaries could rely on the prisoners' own inmate grievance claims. We made clear in *Wicker* that a state-created right cannot be denied "without affording due process of law." *Wicker*, 360 S.C. at 424, 602 S.E.2d at 57. Since the victim and dependent beneficiaries are directly entitled to a portion of the prisoners' wages earned through the Prison Industries Program, the DOC must afford a process for these beneficiaries to have their claims addressed.

■ Accordingly, we hereby hold that, like inmates, the victim and dependent beneficiaries shall be able to maintain **their own** claims through the DOC's internal grievance procedure.[4]

### 2. *Torrence and Ward's Escrowed Wages*

■ Torrence and Ward also argue that they are entitled to a declaration—by the circuit court—of their rights regarding their wages held in escrow. We disagree.

The statute governing the disposition of prisoners' wages provides that the DOC "shall return a prisoner's wages held in escrow ... as follows: ... A prisoner serving life in prison or sentenced to death shall be given the option of having his

---

4. We recognize that the DOC will need to implement new regulations to allow these claimants access to the agency's internal grievance system. Furthermore, if appellants prove true their allegation that the DOC removes any of the money remitted by the private industry sponsor and then disburses the percentages listed in section 24-3-40 based on the lower rate, the DOC would be in violation of the plain language of the statute which directs it to disburse the money based on the gross wages. *See* § 24-3-40(A).

escrowed wages included in his estate or distributed to the persons or entities of his choice." S.C.Code Ann. § 24–3–40(B)(2). According to the Second Amended Complaint, both Torrence and Ward are serving life sentences, and the DOC has informed them they are not entitled to access their escrowed wages until after their death. They claim, however, they are entitled to immediately access these escrowed funds.

For the reasons discussed above, the trial court correctly dismissed pursuant to *Adkins* and *Wicker*. Clearly, Torrence and Ward can present this claim via the inmate grievance procedure. *See Wicker, supra.*

## CONCLUSION

In sum, we hold that appellants cannot maintain their action in the circuit court, and therefore, the trial court correctly granted the DOC's motion to dismiss. However, because the victim and dependent beneficiaries need a forum to pursue their own claims, we direct the DOC to afford them due process via the internal grievance system. *Wicker*, 360 S.C. at 424, 602 S.E.2d at 57 (a state-created right cannot be denied "without affording due process of law").

**AFFIRMED IN RESULT.**

TOAL, C.J., MOORE, BURNETT, JJ., and Acting Justice JAMES W. JOHNSON, JR., concur.